### ZAC FARMER v. ARANSAS COUNTY.

Decided October 17, 1899.

Counties—Refunding Bonds—Commissions of County Treasurer.

Where a county, desiring to refund its outstanding bonds, employs an agent to transact the business who uses his own money in taking up the old bonds, the issuance of the new bonds is not a receipt and disbursement of money by the county such as entitles the county treasurer to commissions thereon.

APPEAL from Aransas. Tried below before Hon. M. F. LOWE.

*E. A. Stevens,* for appellant.

*McFarland & Elgin* and *G. R. Scott & Bro.,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was instituted by the appellant to recover of the appellee, the county of Aransas, a commission of 5 per cent on $20,000, with accrued interest thereon, alleged to have been received by appellee from a sale of its bonds, and the like commission on the same sum alleged to have been disbursed by the appellee; the alleged receipt of said money and disbursement occurring while appellant was the treasurer of said county. The commissions sued for aggregated over $1000, which sum added to the other commissions received by him, the plaintiff averred would not exceed $2000 per annum.

Upon the trial of the cause by the court without the interposition of a jury, judgment was rendered for the county, and the plaintiff has appealed to this court, and in an able brief and argument his counsel insists the judgment is erroneous, and that it should be reversed and judgment here rendered for the appellant. Did we concur with counsel for appellant, that the judgment is erroneous, it would be proper to reverse and render judgment here, as all the facts of the case are presented in the record, and there are no assignments, save such as impugn the correctness of the judgment under the facts. But we are constrained to differ from the conclusion of the counsel, and are of the opinion that the judgment should be affirmed.

There are several assignments of error assailing both the conclusions of fact and of law reached by the trial court, but we shall not consider these assignments seriatim. The vital question of the case is, did Aran-

sas County receive, or was it entitled to receive $20,000 in cash from a sale of its bonds? If so, the appellant was entitled to his commission, and the judgment should be reversed; but if the county did not receive money for its bonds, nor was entitled to receive money for them from the purchaser, then the judgment should be affirmed. And the solution of this question must be determined by the contract with the purchaser.

The facts are succinctly these: The county had outstanding against it bonds to the amount of $20,000, bearing 6 per cent interest per annum; these bonds were due to the State, and held by it for the benefit of the public school fund, the bonds having been sold for the purpose of paying for the erection of a courthouse and jail for the county; and being desirous of refunding these bonds, under the provisions of articles 883 and 897 of the Revised Statutes, the county contracted with one J. B. Oldham, whereby he was to redeem the old bonds for the county, and in consideration of which the county was to sell him bonds of same amount at par, bearing 5 per cent per annum interest, and redeemable in forty years from date, with the option of the county to redeem within a less period, as provided by the statute, and the sum of $250 in cash. The new bonds by the contract of sale were to be delivered to the purchaser when he should have redeemed the bonds at the State treasury, and delivered the same, duly cancelled by the State Treasurer, to the Comptroller, which latter officer was instructed by the county to deliver the new bonds in his office to Oldham, upon his delivery to him of the old bonds, duly canceled by the treasurer; and this contract was fully complied with by each party. The appellant insists that under the terms of this contract, the money with which the old bonds were redeemed was the county's money, and that Oldham was its agent for redeeming the bonds, and the possession of the money by him was possession by the county. But we do not so interpret the contract. The county, wishing to redeem its old bonds, and being without money, engaged Oldham to make the redemption for it, he agreeing to do so in consideration of the sum of $250, and the sale to him of the bonds of the county equal in amount at their par value to the bonds redeemed. It was the duty of the county commissioners to make the burden of taxation as light as possible upon the citizens of the county, and for this purpose, through the services of Oldham, they reduced the interest on the bonded debt of the county, and secured an extension of time for its payment.

Article 897 of the Revised Statutes provides: "Such new bonds may be exchanged for the old bonds at the rate specified in article 894, and they may be sold and the proceeds applied to the purchase of such old bonds at the rate specified in said article; provided, that no delivery of such new bonds shall take place unless a contract has already been entered into for the purchase of a corresponding amount of such old bonds; and provided further, no bonds so issued shall be sold at less than par; each bond sold shall be made to bear the lowest rate of interest that will give it par value."

We think the act of the county in purchasing the old bonds and in

selling the new was in substantial compliance with this article. It can not be questioned, we think, that the consideration for the sale of the new bonds might be the liquidation of the old by the purchaser; and if so, no injustice was done the treasury of the county. Waller County v. Rankin, 35 S. W. Rep., 876; McKinney v. Robinson, 84 Texas, 489. From the cases cited supra, it seems to be settled that a county may issue its bonds in payment of the price of a courthouse or jail to the contractor, and the county treasurer is not entitled to the commissions upon the bonds for delivering same to the contractor under order of the court; and it is also settled that the treasurer is not entitled to commissions on county scrip received by the collector in payment of taxes, and turned over by him to the treasurer, nor is the treasurer entitled to commissions on the scrip when turned over to the county court. The treasurer's right to the commissions is dependent upon the receipt and disbursement by the county of money. And herein lies the distinction between this case and those cited and relied on by counsel for appellant. The orders of the Commissioners Court show that the new bonds were issued for the purpose of refunding the old, and the testimony of Oldham and the records of the court as well show that the old bonds were redeemed by him with his own money, and for which service he received from the county the new bonds equal in amount, at their face value, to the bonds redeemed, less some thirty odd dollars of accrued interest on the latter, which was paid him in cash. The $250 paid him was, as we conclude from the transaction, in payment of the expense and labor of having the new bonds approved by the Attorney-General, and registered in the office of the Comptroller prior to the redemption of the old bonds. If bonds may be issued in payment of a courthouse without injury to the county treasurer, why may they not be issued in payment of old bonds redeemed by one in accordance with a contract made by him with the Commissioners Court?

We are of the opinion there is no error in the judgment, and the same is affirmed.

*Affirmed.*

Writ of error refused.